UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL WARNER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RABBI Y. FRIEDMAN, et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-04345-YGR (PR)<br><br>**ORDER SCREENING AMENDED COMPLAINT; DISMISSING CERTAIN CLAIMS; DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT; ADDRESSING OTHER PENDING MOTIONS; GIVING NOTICE REGARDING INABILITY TO SERVE DEFENDANT L. MAURINO; AND SETTING BRIEFING SCHEDULE** |

**I.　INTRODUCTION**

　　Plaintiff, who is currently in custody at Richard J. Donovan Correctional Facility, filed his original *pro se* complaint under 42 U.S.C. § 1983, in which he sought enforcement of a settlement agreement reached in his earlier case, Case No. C 11-5039 YGR (PR) (N.D. Cal. filed October 13, 2011) ("*Warner I*"). He has previously been granted leave to proceed *in forma* pauperis. Dkt. 3.

　　In his original complaint, Plaintiff named the following Defendants at SVSP: Jewish Chaplain Rabbi Y. Friedman; Chief Deputy Warden A. Solis; and Correctional Administrator L. Trexler. Plaintiff also names the following Defendants from the California Department of Corrections and Rehabilitation ("CDCR"): Appeals Examiner K. Kostecky; Chief of the Inmate Appeals Branch R. Manuel; and Food Administrator L. Maurino. Finally, Plaintiff names the following Defendants from the California Health Care Facility ("CHCF"): Assistant Director of Dietetic A. Rivera; Jewish Chaplain Rabbi Shleffar; Program Assistant of the Acute Treatment Program J. A. Soliz; and Chief of the Office of Administrative Appeals J. A. Zamora. He sought injunctive relief and monetary damages.

　　Plaintiff claimed that on May 23, 2013, a settlement was reached in *Warner I*, which "included the provision of a Kosher Religious Diet." Dkt. 1 at 5. Plaintiff claimed that on June 24, 2013, he began receiving a Kosher Religious Diet. *Id.* at 6. However, Plaintiff stated as follows:

　　　　[ ] The Kosher Religious Diet of which the defendant's [sic] caused

to be provided [to] plaintiff had already begun to undergo a gradual changing in content, clearly degrading in nature; resulting from a new contract with an alternate Kosher Food Products Manufacturer, established on/or about April 8, 2-13.

[ ] Plaintiff had not been advised of any proposed changes to the standard quality of the Kosher Food Products during the settlement conferences leading to the agreement on May 23, 2013.

*Id.* On June 28, 2013, counsel for Defendants in *Warner I* filed a Stipulation for Voluntary Dismissal with Prejudice, the action was voluntarily dismissed on July 15, 2013, and judgment was issued. Dkts. 54, 55.

On August 2, 2016, Plaintiff filed the instant action, in which he alleged in his original complaint that the *Warner I* settlement agreement needed to be enforced because he was "subjugated to degrading changes in the Kosher Religious Diet he was being provided . . . ." Dkt. 1 at 8. On January 11, 2017, the Court dismissed this action as duplicative of *Warner I* and issued judgment. Dkts. 4, 5. Plaintiff appealed the dismissal and judgment to the Ninth Circuit Court of Appeals. Dkt. 6.

On October 26, 2017, the Ninth Circuit vacated this Court's judgment and remanded for further proceedings. Dkt. 14. The Ninth Circuit stated as follows:

> . . . Warner's religious diet claims are based on events that occurred after *Warner I*, the claim based on the alleged failure to provide Warner with hot meals did not arise out of the same transactional nucleus of facts, and defendants Rivera, Shleffar, Soliz, Zamora, and Maurino were not parties to the prior action. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688-89 (9th Cir. 2007) (setting forth standard of review and explaining that in determining whether a later-filed action is duplicative, this court examines "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same"), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). Without reviewing the settlement agreement in *Warner I*, which is not in the record, we cannot determine whether the present action can properly be understood as an action to enforce the settlement agreement in *Warner I*. We vacate the district court's judgment and remand for further proceedings.

*Id.* at 2. Thereafter, the Ninth Circuit issued its mandate. Dkt. 15.

The instant matter was then reopened.

On April 26, 2018, the Court screened Plaintiff's original complaint and found that, when liberally construed, Plaintiff stated cognizable claims under the First Amendment and under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"), for

2

substantial burden on the religious exercise of a person residing in or confined to an institution against Defendants Friedman, Trexler, Solis, Kostecky, Manuel and Maurino. Dkt. 18 at 4. The Court dismissed all other claims and Defendants, including Defendants Rivera, Shleffar, Soliz, and Zamora as not filed in the proper venue because they related to his incarceration at the California Health Care Facility, which is located in the Eastern District of California. *Id.* at 3.

To date, all Defendants except Defendants Friedman and Maurino have been served. The Court notes that it has received information that Defendants Friedman and Maurino are no longer employed at SVSP or at the CDCR, respectively. *See* Dkts. 24, 32.

On July 12, 2018, the remaining served Defendants, who are Defendants Trexler, Solis, Kostecky, and Manuel (hereinafter "Defendants"), moved to dismiss Plaintiff's original complaint on the grounds that this Court did not retain jurisdiction to enforce the settlement agreement and Plaintiff failed to allege any acts by Defendants unrelated to *Warner I* that could serve as a basis for liability in this separate action. Dkt. 28.

Instead of filing an opposition to the motion to dismiss, Plaintiff has filed the following: (1) "Plaintiff's Second Request for an Extension of Time to File an Opposition to Defendant's Motion to Dismiss Under Rules 12(b)(1) & 6/or Leave to Amend the Complaint"; and (2) "Motion for Leave to File an Amended Complaint." Dkts. 36, 37. Plaintiff has submitted his amended complaint in which he still seeks injunctive relief and monetary damages. Dkt. 37-1. Defendants have filed a request to screen Plaintiff's amended complaint. Dkt. 38. Defendants note that Plaintiff's amended complaint "adds completely new allegations against Defendants that were not previously reviewed or screened by the Court," stating as follows:

> Specifically, Plaintiff alleges that that Defendants, all staffers at [SVSP], processed administrative appeal log no. SVSP-15-1749 and provided him with a copy of a letter from a rabbi based in Brooklyn, New York that confirmed that ABC Ventures' food is kosher. (ECF No. 37-1 ¶¶ 5-8; 46-48.) Plaintiff also alleges that Defendants did not use a California based certification agency. (*Id.* at ¶¶ 51 & 55.) Plaintiff did not allege these facts in the original complaint. Further, Plaintiff also names CDCR's former Secretary S. Kernan as a defendant for the first time in his amended complaint, but does not appear to allege any facts that show that Kernan was personally involved in any alleged deprivation of right. This Court should screen Plaintiff's first amended complaint to determine whether Defendants actions in transmitting a letter from a rabbi certifying that food provided by an outside vendor is kosher and failing to use a California

3

based certification agency states a cognizable claim. The Court should also screen the first amended complaint to determine whether Plaintiff has stated a claim against Kernan.

Dkt. 38 at 4.

## II. DISCUSSION

### A. Motion for Leave to File Amended Complaint

Before the Court are Plaintiff's request for leave to file an amended complaint and Defendants' request for the Court to screen the amended complaint under 28 U.S.C. § 1915A.

The motion to dismiss filed by Defendants cut off Plaintiff's right to amend as a matter of right. *See* Fed. R. Civ. P. 15(a). Therefore, Plaintiff can now amend only with leave of court or with the consent of the opposing party. *See id.* Federal Rule of Civil Procedure 15(a) is to be applied liberally in favor of amendments, however, and leave is to be freely given when justice so requires. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994).

In his motion for leave to file an amended complaint, Plaintiff states that he "removed any references to a settlement previously reached involving [Defendants] which entitled [Plaintiff] to a Kosher Diet for the purpose of completely eliminating the Defendant[s'] apparent confusion, which has formed the basis of the Rule 12(b) motion filed by Defendant[s]." Dkt. 27 at 2. Plaintiff also requests leave to "discharge" Defendant Friedman as a named Defendant because Plaintiff "has been unable to secure a current address in order to affect service of the summons and complaint on this defendant." Dkt. 37 at 1. Plaintiff has added a new Defendant, CDCR Secretary Scott Kernan, as a named Defendant in this action. *Id.*

In the interests of justice, Plaintiff's motion for leave to amend is GRANTED. Dkt. 37. The Clerk of the Court is directed to file the document attached to Plaintiff's motion, which is labeled "First Amended Complaint," and docket the aforementioned document as Plaintiff's "Amended Complaint." Dkt. 37-1. The Clerk is further directed to mark the Amended Complaint as filed on October 15, 2018, the date it was received by the Court.

Defendants' motion for the Court to screen the amended complaint under 28 U.S.C. § 1915A is also GRANTED. Dkt. 38. The Court will review the amended complaint below.

4

## B. Screening of Amended Complaint

### 1. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 2. Legal Claims

#### a. Claims Against Defendant Friedman

As explained above, Plaintiff has named almost the same Defendants (except for Defendant Friedman) in his amended complaint, including Defendants Trexler, Solis, Kostecky, Manuel and Maurino. Dkt. 37-1 at 1. He has also named Defendant Kernan. *Id.*

As an initial matter, the Court notes that because Plaintiff has not named Defendant Friedman in the amended complaint, then all claims against Defendant Friedman are DISMISSED.

#### b. Claims Against Remaining Defendants

The First Amendment right to the free exercise of religion is violated where a defendant burdens the practice of a prisoner's religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests. *See Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997). To reach the level of a constitutional violation, "the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is

5

central to religious doctrine.'" *Id.* at 737 (quoting *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)). A prisoner may be inconvenienced in the practice of his or her faith so long as the governmental conduct does not prohibit the prisoner from "participating in the mandates of his religion." *See id.* The mandates of a religion are not merely what is minimally required of adherents of a religion but include that which "the individual human being perceives to be the requirement of the transhuman Spirit to whom he or she gives allegiance." *Peterson v. Minidoka County School Dist.*, 118 F.3d 1351, 1357 (9th Cir. 1997). A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

Here, as mentioned above, Plaintiff no longer alleges that Defendants have violated the terms of the settlement agreement in *Warner I*. Instead, he now presents new facts in his amended complaint alleging that he is still being denied a Kosher diet, which is required by his religious beliefs as a member of the Jewish religion. Plaintiff claims as follows in his amended complaint: On or about June 24, 2013, the CDCR "began providing [him] food products labeled as 'kosher' as a result of [the CDCR's] acknowledgement of the fact that Plaintiff's religious belief[s] established a requirement of a Kosher Religious Diet." Dkt. 37-1 at 3. However, Plaintiff was served "substandard, degrade food product[] manufacture by Element's Food Group, Inc. in container[s] which bore mere sticker tape sticker seal[s] reflecting "earthKosher" logo, intended to represent kosher certification." *Id.* at 4. In addition, he "suffered constipation due to consuming a regular diet of Element's Fo[o]d Group, Inc.'s food products." *Id.* at 5. On May 24, 2014, Plaintiff was "compelled to withdraw from the religious diet program altogether and revert to accepting regular non-kosher designated food[] as a regular diet . . . after rec[ei]ving another spoiled rotten meal manufactured by Element's Food Group, Inc. enterprise." *Id.* On or about January 6, 2015, Plaintiff was provided "food product[] manufactured by ABC Ventures, located in Sacramento California, at the Bateman Facility as part of the Kosher Religious Diet approved by Defendant Maurino. *Id.* at 8. Plaintiff claims that the "food product[] manufactured by ABC Ventures [were] also served in non-factory sealed, misbranded, and mislabeled container[s] which contain[ed] individual unit[s] of food product[] baring no brand identification[], list of

6

1    ingredient[s] or nutritional value information." *Id.* Plaintiff then submitted a grievance, 602
2    appeal log number SVSP-15-1749, in which he complained about the aforementioned alleged
3    Kosher Religious Diet. *Id.* at 9. In response, Defendants reviewed his appeal and responded by
4    providing Plaintiff with "evidence that the food product[s] manufactured by ABC Ventures, and
5    provided to him as a Kosher Religious Diet, were actually certified by [a] Brooklyn, New York
6    organization." *Id.* at 8. Plaintiff claims that "neither earthKosher, located in Boulder, Colorado,
7    or the Triangle K., Inc. certification agency located in Brooklyn, New York, operated in the
8    certification processes at these facility[ies] on a daily basis to ensure compliance with all Kosher
9    laws at all times of production. *Id.* at 9. Plaintiff also claims that "not a single kosher
10   Certification Agency located in the State of California would agree to the certification of the food
11   product[s] manufactured by earthKosher or ABC Ventures as being in compliance with
12   Orthodoxed [sic] Jewish laws. *Id.* As such, by denying SVSP-15-1749, Plaintiff claims that
13   "Defendant[s] and their agent[s] have systematically deprived [him] of a reliable, one-hundred
14   percent Orthodoxed [sic] Jewish religious diet for approximately either (8) years although [he] is
15   entitled to such a diet while under their authority within the CDCR." *Id.* at 11. Liberally
16   construing Plaintiff's allegations in his amended complaint, they are sufficient to require a
17   response from Defendants as further explained below.

18         Liability may be imposed on an individual defendant under section 1983 if the plaintiff can
19   show that the defendant proximately caused the deprivation of a federally protected right. *Leer v.*
20   *Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th
21   Cir. 1981). A person deprives another of a constitutional right within the meaning of section 1983
22   if he does an affirmative act, participates in another's affirmative act or omits to perform an act
23   which he is legally required to do, that causes the deprivation of which the plaintiff complains.
24   *Leer*, 844 F.2d at 633; *see, e.g.*, *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison
25   official's failure to intervene to prevent Eighth Amendment violation may be basis for liability).
26   The inquiry into causation must be individualized and focus on the duties and responsibilities of
27   each individual defendant whose acts or omissions are alleged to have caused a constitutional
28   deprivation. *Leer*, 844 F.2d at 633.

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). An administrator may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help. *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006). "'Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" *Preschooler II v. Davis*, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted). Evidence of a prisoner's letter to an administrator alerting him to a constitutional violation is sufficient to generate a genuine issue of material fact as to whether the administrator was aware of the violation, even if he denies knowledge and there is no evidence the letter was received. *Jett*, 439 F.3d at 1098. Evidence that a prison supervisor was personally involved in an unconstitutional transfer and denied all appeals of the transfer, for example, may suffice. *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *see also Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (supervisor who signed internal affairs report dismissing complaint against officer despite evidence of officer's use of excessive force may be liable for damages).

Read liberally, the allegations in Plaintiff's amended complaint state a cognizable First Amendment claim against Defendants Trexler, Solis, Kostecky, Manuel and Maurino. Therefore, this claim may proceed against the aforementioned Defendants.

And liberally construed, Plaintiff's allegations also state a cognizable claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"), for substantial burden on the religious exercise of a person residing in or confined to an institution

against Defendants Trexler, Solis, Kostecky, Manuel and Maurino. *But see Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (RLUIPA does not authorize suits against state actors (including prison officials) acting in their individual capacity; claims may only be brought against such defendants in their official capacity).

Finally, Plaintiff names CDCR Secretary, Defendant Kernan, in the caption of his amended complaint, but Plaintiff does not claim that this Defendant personally violated his constitutional rights. Rather, Plaintiff seems to contend that Defendant Kernan is liable based on the conduct of his subordinates—the other Defendants named above. Respondeat superior liability is not available under section 1983. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, Plaintiff must allege that the supervisory liability Defendants "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* Here, no facts are alleged to establish supervisorial liability on the part of Defendant Kernan. Accordingly, Plaintiff's supervisory liability claim against Defendant Kernan is DISMISSED without prejudice.

### C. Pending Motions

Because the Court has granted Plaintiff's motion to amend his complaint, the operative complaint in this action is the amended complaint. Therefore, Defendants' motion to dismiss the original complaint is DENIED as moot. Dkt. 28. It also follows that since Plaintiff has filed his amended complaint and since Defendants' motion to dismiss has been denied as moot, then "Plaintiff's Second Request for an Extension of Time to File an Opposition to Defendant's Motion to Dismiss Under Rules 12(b)(1) & 6/or Leave to Amend the Complaint" is also DENIED as moot. Dkt. 36.

### D. Regarding Service Issues Involving Defendant Maurino

Service has been ineffective on Defendant Maurino. As mentioned above, the Court has been informed that Defendant Maurino is "not currently employed with the Department and [the Department] has no authorization to accept service on his behalf on file." Dkt. 32 at 1.

As Plaintiff is proceeding *in forma pauperis*, he is responsible for providing the Court with current addresses for all Defendants so that service can be accomplished. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994); *Sellers v. United States*, 902 F.2d 598, 603 (7th Cir. 1990).

9

While Plaintiff may rely on service by the United States Marshal, or in this case, the procedure for requesting a defendant to waive the service requirement, "a plaintiff may not remain silent and do nothing to effectuate such service." *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987). When advised of a problem accomplishing service, a *pro se* litigation must "attempt to remedy any apparent defects of which [he] has knowledge." *Id*. Pursuant to Federal Rule of Civil Procedure 4(m), if a complaint is not served within 90 days from the filing of the complaint (or in this case an amended complaint), it may be dismissed without prejudice for failure of service. Fed. R. Civ. P. 4(m) (providing that if service of the summons and complaint is not made upon a defendant in 90 days after the filing of the complaint, the action must be dismissed without prejudice as to that defendant absent a showing of "good cause"); *see also Walker*, 14 F.3d at 1421-22 (prisoner failed to show cause why prison official should not dismissed under Rule 4(m) because prisoner did not prove that he provided marshal with sufficient information to serve official).

No later than **twenty-eight (28) days** from the date of this Order, Plaintiff must provide the Court with a current address for Defendant Maurino. Plaintiff should review the federal discovery rules, Rules 26-37 of the Federal Rules of Civil Procedure, for guidance about how to determine the current address of this Defendant.

If Plaintiff fails to provide the Court with the current address of Defendant Maurino within the twenty-eight-day deadline, all claims against this Defendant will be dismissed without prejudice under Rule 4(m).

### III. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's motion for leave to amend is GRANTED. Dkt. 37. The Clerk is directed to file the document attached to Plaintiff's motion, which is labeled "First Amended Complaint," and docket the aforementioned document as Plaintiff's "Amended Complaint." Dkt. 37-1. The Clerk is further directed to mark the Amended Complaint as filed on October 15, 2018, the date it was received by the Court.

2. Defendants' motion for the Court to screen the amended complaint under 28 U.S.C.

§ 1915A is also GRANTED. Dkt. 38.

3. Because Plaintiff has not named Defendant Friedman in the amended complaint, then all claims against Defendant Friedman are DISMISSED.

4. Plaintiff's amended complaint states a cognizable First Amendment claim against Defendants Trexler, Solis, Kostecky, Manuel, and Maurino.

5. Plaintiff's allegations in his amended complaint also state a cognizable RLUIPA claim against Defendants Trexler, Solis, Kostecky, Manuel, and Maurino.

6. Plaintiff's supervisory liability claim against Defendant Kernan is DISMISSED without prejudice.

7. Defendants' motion to dismiss the original complaint and "Plaintiff's Second Request for an Extension of Time to File an Opposition to Defendant's Motion to Dismiss Under Rules 12(b)(1) & 6/or Leave to Amend the Complaint" are both DENIED as moot. Dkts. 28, 36.

8. No later than **twenty-eight (28) days** from the date of this Order, Plaintiff must provide the Court with a current address for Defendant L. Maurino. Plaintiff should review the federal discovery rules, Rules 26-37 of the Federal Rules of Civil Procedure, for guidance about how to determine the current address of this Defendant. **If Plaintiff fails to provide the Court with the current address of Defendant Maurino within the twenty-eight-day deadline, all claims against this Defendant will be dismissed without prejudice under Rule 4(m).**

9. Defendants shall answer the amended complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

a. No later than **twenty-eight (28) days** from the date of this Order, Defendants shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[1]

---
[1] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in Rand must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice. However, the Court notes that under the new law of the circuit, in the rare event that a failure to exhaust is clear on the face of the amended complaint, Defendants may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is not clear on the face of the amended complaint, Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendants are entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

      b.     Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** after the date on which Defendants' motion is filed.

      c.     Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is

entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your amended complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

Plaintiff also is advised that -- in the rare event that Defendants argue that the failure to exhaust is clear on the face of the amended complaint -- a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents -- documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your amended complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse Defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

        d.        Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

    e. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

  10. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

  11. All communications by Plaintiff with the Court must be served on Defendants' counsel by mailing a true copy of the document to counsel.

  12. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice an amended complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

  13. Upon a showing of good cause, requests for a reasonable extension of time will be granted provided they are filed on or before the deadline they seek to extend.

  14. This Order terminates Docket Nos. 28, 36, 37 and 38.

  IT IS SO ORDERED.

Dated: February 6, 2019

_____
YVONNE GONZALEZ ROGERS
United States District Judge