UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL WARNER,<br><br>        Plaintiff,<br><br>    v.<br><br>A. SOLIS, et al.,<br><br>        Defendants. | Case No. 16-cv-04345-YGR (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES; AND DENYING AS MOOT THEIR MOTION FOR JUDGMENT ON THE PLEADINGS FOR FAILURE TO STATE A CLAIM** |

## I. INTRODUCTION

On August 2, 2016, Plaintiff, who is a member of the Jewish religion and currently in custody at Richard J. Donovan Correctional Facility ("RJD"), filed his original *pro se* complaint under 42 U.S.C. § 1983, in which he sought enforcement of a settlement agreement reached in his earlier case, Case No. C 11-5039 YGR (PR) (N.D. Cal. filed October 13, 2011) ("*Warner I*"). In his original complaint, Plaintiff named the following Defendants at Salinas Valley State Prison ("SVSP"): Jewish Chaplain Rabbi Y. Friedman; Chief Deputy Warden A. Solis; Correctional Administrator L. Trexler; and Appeals Examiner K. Kostecky. Plaintiff also named the following Defendants from the California Department of Corrections and Rehabilitation ("CDCR"):Chief of the Inmate Appeals Branch R. Manuel; and Food Administrator L. Maurino. Lastly, Plaintiff named the following Defendants from the California Health Care Facility ("CHCF"): Assistant Director of Dietetic A. Rivera; Jewish Chaplain Rabbi Shleffar; Program Assistant of the Acute Treatment Program J. A. Soliz; and Chief of the Office of Administrative Appeals J. A. Zamora. He sought injunctive relief and monetary damages.

Plaintiff claimed that a settlement was reached in *Warner I* on May 23, 2013, which "included the provision of a Kosher Religious Diet." Dkt. 1 at 5. Plaintiff claimed that on June 24, 2013, he began receiving a Kosher Religious Diet. *Id.* at 6. However, Plaintiff stated as follows:

> [ ] The Kosher Religious Diet of which the defendant's [sic] caused to be provided [to] plaintiff had already begun to undergo a gradual changing in content, clearly degrading in nature; resulting from a new

| | |
|---|---|
| 1 | contract with an alternate Kosher Food Products Manufacturer, established on/or about April 8, 2-13. |
| 2 | |
| 3 | [ ] Plaintiff had not been advised of any proposed changes to the standard quality of the Kosher Food Products during the settlement conferences leading to the agreement on May 23, 2013. |

*Id.*

On June 28, 2013, counsel for Defendants in *Warner I* filed a Stipulation for Voluntary Dismissal with Prejudice, that action was voluntarily dismissed on July 15, 2013, and judgment was issued. Dkts. 54, 55 in Case No. C 11-5039 YGR (PR).

As mentioned above, on August 2, 2016, Plaintiff filed the instant action, in which he alleged in his original complaint that the *Warner I* settlement agreement needed to be enforced because he was "subjugated to degrading changes in the Kosher Religious Diet he was being provided . . . ." Dkt. 1 at 8. On January 11, 2017, the Court dismissed this action as duplicative of *Warner I* and issued judgment. Dkts. 4, 5. Plaintiff appealed the dismissal and judgment to the Ninth Circuit Court of Appeals. Dkt. 6.

On October 26, 2017, the Ninth Circuit vacated this Court's judgment and remanded for further proceedings. Dkt. 14. The Ninth Circuit stated as follows:

> . . . Warner's religious diet claims are based on events that occurred after *Warner I*, the claim based on the alleged failure to provide Warner with hot meals did not arise out of the same transactional nucleus of facts, and defendants Rivera, Shleffar, Soliz, Zamora, and Maurino were not parties to the prior action. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688-89 (9th Cir. 2007) (setting forth standard of review and explaining that in determining whether a later-filed action is duplicative, this court examines "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same"), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). Without reviewing the settlement agreement in *Warner I*, which is not in the record, we cannot determine whether the present action can properly be understood as an action to enforce the settlement agreement in *Warner I*. We vacate the district court's judgment and remand for further proceedings.

*Id.* at 2. Thereafter, the Ninth Circuit issued its mandate. Dkt. 15.

The instant matter was then reopened.

On April 26, 2018, the Court screened Plaintiff's original complaint and found that, when liberally construed, Plaintiff stated cognizable claims under the First Amendment and under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"), for a

2

substantial burden on the religious exercise of a person residing in or confined to an institution against Defendants Friedman, Trexler, Solis, Kostecky, Manuel and Maurino. Dkt. 18 at 4. The Court dismissed all other claims and Defendants, including Defendants Rivera, Shleffar, Soliz, and Zamora as not filed in the proper venue because they related to his incarceration at the CHCF, which is located in the Eastern District of California. *Id.* at 3. Thereafter, all of the aforementioned Defendants except Defendants Friedman and Maurino were successfully served. The Court received information that Defendants Friedman and Maurino were no longer employed at SVSP or at the CDCR, respectively. *See* Dkts. 24, 32.

On July 12, 2018, the remaining served Defendants—Defendants Trexler, Solis, Kostecky, and Manuel—moved to dismiss Plaintiff's original complaint on the grounds that this Court did not retain jurisdiction to enforce the settlement agreement and Plaintiff failed to allege any acts by Defendants unrelated to *Warner I* that could serve as a basis for liability in this separate action. Dkt. 28.

Instead of filing an opposition to the motion to dismiss, Plaintiff moved for leave to file an amended complaint and submitted his amended complaint, in which he still seeks injunctive relief and monetary damages. Dkt. 37-1. Defendants then filed a request to screen Plaintiff's amended complaint. Dkt. 38. Defendants noted that Plaintiff's amended complaint "add[ed] completely new allegations against Defendants that were not previously reviewed or screened by the Court," stating as follows:

> Specifically, Plaintiff alleges that that Defendants, all staffers at [SVSP], processed administrative appeal log no. SVSP-15-1749 and provided him with a copy of a letter from a rabbi based in Brooklyn, New York that confirmed that ABC Ventures' food is kosher. (ECF No. 37-1 ¶¶ 5-8; 46-48.) Plaintiff also alleges that Defendants did not use a California based certification agency. (*Id.* at ¶¶ 51 & 55.) Plaintiff did not allege these facts in the original complaint. Further, Plaintiff also names CDCR's former Secretary S. Kernan as a defendant for the first time in his amended complaint, but does not appear to allege any facts that show that Kernan was personally involved in any alleged deprivation of right. This Court should screen Plaintiff's first amended complaint to determine whether Defendants actions in transmitting a letter from a rabbi certifying that food provided by an outside vendor is kosher and failing to use a California based certification agency states a cognizable claim. The Court should also screen the first amended complaint to determine whether Plaintiff has stated a claim against Kernan.

3

Dkt. 38 at 4.

In an Order dated February 6, 2019, the Court granted Plaintiff's motion to amend his complaint, and thus, the operative complaint in this action is the amended complaint. Dkt. 41 at 4. The Court then denied as moot Defendants' motion to dismiss the original complaint. *Id.* at 9. The Court noted in addition to Defendant Kernan, Plaintiff had also named "almost the same Defendants (except for Defendant Friedman) in his amended complaint, including Defendants Trexler, Solis, Kostecky, Manuel and Maurino." *Id.* at 5 (quoting Dkt. 37-1 at 1). Thus, the Court noted that because Plaintiff had not named Defendant Friedman in the amended complaint, then all claims against Defendant Friedman were dismissed. *Id.* Upon reviewing Plaintiff's allegations in his amended complaint, the Court determined that it stated a cognizable First Amendment claim against Defendants Trexler, Solis, Kostecky, Manuel and Maurino. *Id.* at 5-9. The Court also found that Plaintiff's allegations stated a cognizable claim under the RLUIPA for substantial burden on the religious exercise of a person residing in or confined to an institution against Defendants Trexler, Solis, Kostecky, Manuel and Maurino. *Id.* Finally, the Court dismissed without prejudice Plaintiff's supervisory liability claim against Defendant Kernan. The Court then ordered the remaining Defendants to answer the amended complaint and issued a briefing schedule to govern dispositive motions in this action. *Id.* at 11-14.

On February 22, 2019, the served Defendants filed an answer to the amended complaint. Dkt. 43.

On February 25, 2019, the Court noted that it had been informed that the CDCR's Office of Legal Affairs was authorized to accept service on behalf of Defendant Maurino. Dkt. 45 at 1. Thus, the Clerk of the Court was directed to reissue service on Defendant Maurino at the Office of Legal Affairs. *Id.* Defendant Maurino has since been served and has filed an answer to the amended complaint. Dkt. 52.

The parties are now presently before the Court on the dispositive motion filed by the served Defendants—Defendants Trexler, Solis, Kostecky, Manuel and Maurino (hereinafter "Defendants"). Dkt. 53. Defendants move for summary judgment on Plaintiff's First Amendment and RLUIPA claims on the following grounds: (1) Plaintiff failed to exhaust administrative

4

remedies against Defendants, as required by the Prison Litigation Reform Act ("PLRA"); and (2) Defendants are entitled to qualified immunity. *Id.* at 17-27. In the alternative, Defendants move for judgment on the pleadings to dismiss Plaintiff's First Amendment and RLUIPA claims that Defendants improperly denied him a Kosher Religious Diet. *Id.* at 27-28. Despite being given an extension of time to do so, *see* Dkt. 55, Plaintiff failed to file an opposition to Defendants' dispositive motion.

Having read and considered the papers submitted in connection with this matter, the Court hereby GRANTS Defendants' motion for summary judgment for failure to exhaust administrative remedies, and DENIES as moot their motion for judgment on the pleadings for failure to state a claim.

## II. DISCUSSION

One of the issues presented in Defendants' summary judgment motion is whether Plaintiff properly exhausted his administrative remedies against Defendants. Before turning to the facts of this case, the Court briefly reviews the requirements of the PLRA and administrative review process applicable to California prisoners.

### A. Legal Framework for Exhaustion of Available Administrative Remedies

The PLRA requires a prisoner to exhaust all available administrative remedies before bringing an action with respect to prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion of all "available" remedies is mandatory; those remedies neither need to meet federal standards, nor must they be "plain, speedy, and effective." *Booth v. Churner*, 532 U.S. 731, 739-40 (2001). The PLRA requires *proper* exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to exhaust

5

properly. *Id.*

The CDCR provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. Cal. Code Regs. tit. 15, § 3084.1(e).

On January 28, 2011, certain revisions to the California prison regulations governing inmate grievances became operative. *See* History, Note 11, Cal. Code Regs. tit. 15, § 3084.2. In order to exhaust all available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 ("602 appeal") and proceed through three levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee (i.e., "Director's level"). Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7. Under specific circumstances, the first level review may be bypassed. *Id.* The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. *Id.* § 3084.7(d)(3). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005); *Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002).

The level of detail in an administrative grievance necessary to exhaust a claim properly is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The level of specificity required in the appeal is described in the California Code of Regulations as follows:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.

Cal. Code Regs. tit. 15, § 3084.2(a)(3) (emphasis added).

### B. Factual Background[1]

#### 1. The Parties

At the time of the events set forth in his amended complaint, Plaintiff was a state prisoner "in the custody of the [CDCR]." *See* Dkt. 42 at 2.

Plaintiff contends that Defendants Trexler, Solis, and Kostecky worked as administrators at SVSP during the alleged time period who reviewed 602 appeals concerning matters occurring at SVSP and acted as the final decision makers within the administrative process. *Id.* at 2-3. Plaintiff contends that Defendant Manuel served as the "Chief decision-maker of the [CDCR]'s administrative remedy process" during the time period alleged in his amended complaint. *Id.* at 3. Plaintiff sued Defendant Maurino, alleging that she was "responsible for the planning and implementation of all [CDCR] menus," including the approval of the menus as well as the procurement and distribution of all food products during the alleged time period. *Id.* at 3.

#### 2. Plaintiff's 602 Appeals

As mentioned above, the State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." *See* Cal. Code Regs. tit. 15, § 3084.1(a). The Office of Appeals ("OOA") receives, reviews, and maintains non-medical inmate grievances accepted for a third level review, which is the final review in CDCR's inmate grievance process. Spaich Decl. ¶ 3.

---

[1] This Order contains many acronyms and abbreviations. Here, in one place, they are:

| | |
|---|---|
| 602 Appeal | CDCR Form 602 |
| CHCF | California Health Care Facility |
| CDCR | California Department of Corrections and Rehabilitation |
| CMC | California Men's Colony |
| Director's/Third Level | Third Formal Level Appeal Filed with CDCR Director or designee |
| IATS | Inmate Appeals Tracking System |
| OOA | Office of Appeals |
| PLRA | Prison Litigation Reform Act |
| RJD | Richard J. Donovan Correctional Facility |
| RLUIPA | Religious Land Use and Institutionalized Persons Act |
| SVSP | Salinas Valley State Prison |
| VSP | Valley State Prison |

7

Upon receipt by the OOA, non-healthcare inmate grievances concerning the actions of custody staff are logged into a computer database known as the Inmate Appeals Tracking System ("IATS"). *Id.* ¶ 4. The IATS tracks inmate appeals that have been accepted by the OOA and adjudicated at the third level of review, as well as all appeals that were received and screened out, and the reasons the appeals were screened out. *Id.*

Again, as explained above, in order to exhaust available administrative remedies within this system, a prisoner must proceed through three levels of appeal. *See* Cal. Code Regs. tit. 15, § 3084.5; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). If an inmate pursues his claims through the third-level review, the inmate has satisfied the administrative remedies exhaustion requirement under § 1997e(a). *See id.* at 1237-38.

Here, OOA Acting Chief J. Spaich claims that he searched Plaintiff's appeal file for any third level inmate appeals properly submitted by Plaintiff between October 2013 and February 4, 2019. Spaich Decl. ¶¶ 5-6. The aforementioned review revealed that during the relevant time frame Plaintiff submitted twenty-two inmate appeals. *Id.* ¶¶ 6-28, Exs. A-W. And of these inmate appeals, only two appeals addressed Plaintiff's complaints about a Kosher Religious Diet: Appeal Log Nos. CHCF 13-00097 and RJD 16-02054. *Id.* ¶¶ 6, 8, 20, Ex. A-C.

The Court elaborates on the two aforementioned relevant appeals below by including the following summary provided by Defendants, as follows:

**[a. Appeal Log No. CHCF 13-00097]**

> In inmate appeal CHCF 13-00097, Warner alleged that he had not received food that complied with his religious-kosher-diet requirements while housed at the Stockton Acute Treatment Program at [CHCF], Stockton, California. (Decl. Spaich ¶¶ 6, 7, Ex. B.) Warner's inmate appeal, dated August 2, 2013, complained that he settled a civil lawsuit on May 23, 2013, but had not yet received a kosher diet. (Decl. Spaich Ex. B.) Warner alleged that he had received food products with no manufacturer's label, table of contents, ingredients, universal seals, or expiration dates. (*Id.*) Warner further complained that he had only received one hot meal. (*Id.*) In his inmate appeal, Warner did not identify Defendants or describe any alleged wrongdoing by them. (*Id.*) Defendants did not review or decide this inmate appeal on behalf of the OOA or CDCR. (Spaich Decl. ¶ 7 Ex. B.) This inmate appeal was reviewed and processed by Appeals Examiner C. Zuniga at the third level of review, who is not a defendant in this lawsuit. (*Id.*)

### [b. Appeal Log No. CHCF 13-00097]

In inmate appeal RJD 16-02054, Warner alleged that he had been inappropriately denied Kosher meals while housed at [RJD,] San Diego, California. (Decl. Spaich ¶¶ 6, 8, Ex. C.) Warner submitted an inmate appeal dated May 12, 2016 that stated he had been transferred from the California Men's Colony [("CMC")] to [RJD] on April 26, 2016, but had not yet received his religious kosher meal diet. (*Id.*) In his inmate appeal, Warner did not identify Defendants or describe any alleged wrongdoing by them. (*Id.*) Defendants did not review or decide this inmate appeal on behalf of the OOA or CDCR. (Spaich Decl. ¶ 8 Ex. C.) This inmate appeal was reviewed and processed by Appeals Examine J. Vila at the third level of review, who is not a defendant in this lawsuit. (*Id.*)

Dkt. 53 at 13-14 (citing Spaich Decl. ¶¶ 6-8, Exs. B, C) (brackets added).

Finally, the Court also elaborates on remaining appeals accepted and reviewed at the third level of review from 2013 through 2018,[2] by including the following summary provided by Defendants, as follows:

### [c. Remaining Inmate Appeals Accepted and Reviewed by the Third Level of Review from 2013 to 2018]

Inmate appeal RJD 13-02248 appealed a disciplinary report, CDCR Form 115, Rules Violation Report that Warner received on April 29, 2013. (Spaich Decl. ¶ 9, Ex. D.) Inmate appeal RJD 13-03812 concerned the cancellation of another inmate appeal, RJD 13-03734, that concerned Warner's contention that his behavioral credits had been miscalculated. (Spaich Decl. ¶ 10, Ex. E.) Inmate appeal CHCF 13-00029 concerned Warner's contention that while he was housed at Stockton Acute Treatment Program at [CHCF], Stockton, California, he had been improperly denied access to the law library. (Spaich Decl. ¶ 11, Ex. F.) Inmate appeal RJD 13-03277 concerned Warner's contention that there was a misallocation of his trust funds and accounting irregularities due to the collection of court filing fees. (Spaich Decl. ¶ 12, Ex. G.)

Inmate appeal RJD 14-02156 concerned Warner's allegation that his property had been lost or damaged through the negligence of staff during his transfer from [RJD] to the Corcoran State Prison, Corcoran, California. (Spaich Decl. ¶ 13, Ex. H.) Inmate appeal CMC 15-02442 concerned the cancellation of another inmate appeal, CMC E-15-02415, concerning personal property and arose out of events that occurred at [CMC], San Luis Obispo, California. (Spaich Decl. ¶ 14, Ex. I.) Inmate appeal SVSP 15- 05220 concerned the cancellation of another inmate appeal, SVSP L-15-03197, an appeal that arose out of

---

[2] In 2019, Plaintiff only had one 602 appeal accepted at the third level of review—appeal log no. VSP-18-01918, which was filed on January 31, 2019. Spaich Decl., Ex. A (Dkt. 53-2 at 7). However, that appeal was screened out on March 28, 2019 because the "time constraints [were] not met." *Id.* Therefore, the Court only elaborates on the remaining appeals from 2013 to 20*18* instead of 20*19*.

events that occurred at [SVSP], Soledad, California. (Spaich Decl. ¶ 15, Ex. J.) In inmate appeal SVSP L-15-03197, Warner alleged that prison staff obstructed his access to the courts by denying him paper, ink-pen fillers, legal documents, and access to other stored personal property. (*Id.*)

Inmate appeal CMC 16-00116 concerned Warner's allegations that Officer Malik subjected him to cruel and unusual punishment by forcing him to endure wet and cold conditions under threat of a disciplinary action. (Spaich Decl. ¶ 16, Ex. K.) Inmate appeal CMC 16-00823 concerned Warner's allegations that the staff were not appropriately honoring his medical lay-in. (Spaich Decl. ¶ 17, Ex. L.) Inmate appeal RJD 16-02606 concerned Warner's allegations that staff had been deliberately indifferent to his Integrated Housing Code. (Spaich Decl. ¶ 18, Ex. M.) Inmate appeal RJD 16-03809 concerned Warner's allegations that Officers Gillis and Henson had retaliated against him on August 23, 2016 for filing an inmate appeal on July 19, 2016 against him. (Spaich Decl. ¶ 19, Ex. N.)

Inmate appeal RJD 17-00237 concerned Warner's allegations that he was improperly retained in Administrative [Segregation] Unit on October 16, 2016 at [RJD,] San Diego, California. (Spaich Decl. ¶ 20, Ex. O.) Inmate appeal RJD 17- 01579 concerned Warner's allegation that his property was mishandled by staff at [RJD,] San Diego, California, during his transfer to Valley State Prison, Chowchilla, California. (Spaich Decl. ¶ 21, Ex. P.) Inmate appeal VSP 17-02292 concerned Warner's allegation that he was improperly housed. (Spaich Decl. ¶ 22, Ex. Q.)

Inmate appeal VSP 18-00741 concerned Warner's allegation that he was improperly denied incoming mail [at Valley State Prison ("VSP")]. (Spaich Decl. ¶ 23, Ex. R.) Inmate appeal VSP 18-00649 concerned Warner's allegation that he was improperly prevented from disbursing funds from his trust account. (Spaich Decl. ¶ 24, Ex. S.) Inmate appeal VSP 18-01113 concerned Warner's allegation [relating to a denial of photos sent to him by mail]. (Spaich Decl. ¶ 25, Ex. T.) Inmate appeal VSP 18-01197 concerned Warner's allegation that inmate appeal VSP 18-01008 [which also related to a denial of photos sent to him by mail], was improperly cancelled. (Spaich Decl. ¶ 26, Ex. U.) Inmate appeal VSP 18-01665 concerned Warner's allegation that Officer Whitfield conducted a punitive search of his cell. (Spaich Decl. ¶ 27, Ex. V.) Inmate appeal VSP 18-01575 concerned Warner's allegation that he had improperly been issued a Rules Violation Report for threatening staff at [VSP], Chowchilla, California. (Spaich Decl. ¶ 28, Ex. W.)

Dkt. 53 at 14-16 (citing Spaich Decl. ¶¶ 9-28, Exs. D-W) (brackets added).

### C. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

10

material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with defendants, however. *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. A district court may consider only admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

In support of their motion for summary judgment, Defendants have submitted a declaration from OOA Acting Chief Spaich along with supporting exhibits, which are mostly copies of Plaintiff's inmate appeals. Dkts. 53-1, 53-2. Acting Chief Spaich states that he conducted a review of the OOA system files to locate any third level inmate appeals between October 2013 and February 4, 2019 properly submitted by Plaintiff, and attached to his declaration is a true and

11

accurate copy of the IATS Printout for Plaintiff. Spaich Decl. ¶¶ 4-5, Ex. A. Also attached to his declaration are true and correct copy of the responses at all three levels of appeal to Plaintiff's twenty-two appeals. *Id.* ¶¶ 6-28, Exs. A-W. Because the aforementioned documents have been properly authenticated pursuant to Federal Rule of Evidence 803(6), the Court will consider these documents in connection with Defendants' motion for summary judgment.

As mentioned, Plaintiff did not file an opposition to Defendants' dispositive motion. However, Plaintiff has filed a verified amended complaint, which he has signed under penalty of perjury. Dkt. 42 at 15. The Court may treat the allegations in the verified amended complaint as an opposing affidavit to the extent such allegations are based on Plaintiff's personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating a plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, he stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

### D. Plaintiff's Claims

The following background relating to Plaintiff's claims is taken from the Court's February 6, 2019 Order screening the amended complaint:

> Here, as mentioned above, Plaintiff no longer alleges that Defendants have violated the terms of the settlement agreement in *Warner I*. Instead, he now presents new facts in his amended complaint alleging that he is still being denied a Kosher diet, which is required by his religious beliefs as a member of the Jewish religion. Plaintiff claims as follows in his amended complaint: On or about June 24, 2013, the CDCR "began providing [him] food products labeled as 'kosher' as a result of [the CDCR's] acknowledgement of the fact that Plaintiff's religious belief[s] established a requirement of a Kosher Religious Diet." Dkt. 37-1 at 3. However, Plaintiff was served "substandard, degrade food product[] manufacture by Element's Food Group, Inc. in container[s] which bore mere sticker tape sticker seal[s] reflecting "earthKosher" logo, intended to represent kosher certification." *Id.* at 4. In addition, he "suffered constipation due to consuming a regular diet of Element's Fo[o]d Group, Inc.'s food products." *Id.* at 5. On May 24, 2014, Plaintiff was "compelled to withdraw from the religious diet program altogether and revert to accepting regular non-kosher designated food[] as a regular diet . . . after rec[ei]ving another spoiled rotten meal manufactured by Element's Food Group, Inc. enterprise." *Id.* On or about January 6, 2015, Plaintiff was provided "food product[] manufactured by ABC Ventures, located in

12

> Sacramento California, at the Bateman Facility as part of the Kosher Religious Diet approved by Defendant Maurino. *Id.* at 8. Plaintiff claims that the "food product[] manufactured by ABC Ventures [were] also served in non-factory sealed, misbranded, and mislabeled container[s] which contain[ed] individual unit[s] of food product[] baring no brand identification[], list of ingredient[s] or nutritional value information." *Id.* Plaintiff then submitted a grievance, 602 appeal log number SVSP-15-1749, in which he complained about the aforementioned alleged Kosher Religious Diet. *Id.* at 9. In response, Defendants reviewed his appeal and responded by providing Plaintiff with "evidence that the food product[s] manufactured by ABC Ventures, and provided to him as a Kosher Religious Diet, were actually certified by [a] Brooklyn, New York organization." *Id.* at 8. Plaintiff claims that "neither earthKosher, located in Boulder, Colorado, or the Triangle K., Inc. certification agency located in Brooklyn, New York, operated in the certification processes at these facility[ies] on a daily basis to ensure compliance with all Kosher laws at all times of production. *Id.* at 9. Plaintiff also claims that "not a single kosher Certification Agency located in the State of California would agree to the certification of the food product[s] manufactured by earthKosher or ABC Ventures as being in compliance with Orthodoxed [sic] Jewish laws. *Id.* As such, by denying SVSP-15-1749, Plaintiff claims that "Defendant[s] and their agent[s] have systematically deprived [him] of a reliable, one-hundred percent Orthodoxed [sic] Jewish religious diet for approximately either (8) years although [he] is entitled to such a diet while under their authority within the CDCR." *Id.* at 11.

Dkt. 41 at 6-7.

### E. Analysis

Defendants claim that the prison has no record of either his First Amendment or RLUIPA claims against Defendants showing that either claim has been exhausted at the final level of review. Dkt. 51 at 18. Defendants argue that Plaintiff's claims remain unexhausted because he never submitted them to, nor received a substantive decision by the final level of review as required by prison regulations. *Id.* at 18-22. Therefore, Defendants argue that they are entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies. *Id.* at 22.

In support of Defendants' argument that Plaintiff's claims are unexhausted, Defendants submit evidence that the non-medical appeals submitted by Plaintiff do not grieve either the First Amendment or RLUIPA claims against Defendants. Specifically, during the time frame at issue, Plaintiff submitted twenty-two non-healthcare appeal to the OOA that was accepted by and received a decision from the OOA. Spaich Decl. ¶¶ 6-28, Exs. A-W. But Defendants argue that none of these appeals concerned allegations relating to Plaintiff's claims against Defendants. *See*

13

Dkt. 52 at 18-22; *see also* Spaich Decl. ¶¶ 6-28, Exs. A-W. Finally, Defendants point out that while two of his appeals, log nos. CHCF 13-00097 and RJD 16-02054, concerned the alleged denial of a Kosher Religious Diet, neither of the two appeals exhausted Plaintiff's claims against Defendants. Dkt. 52 at 19-22 (citing Spaich Decl. ¶¶ 6-8, Exs. A-C).

The Court has reviewed Plaintiff's aforementioned twenty-two appeals, including the appeals relating to a denial of a Kosher Religious Diet—CHCF 13-00097 and RJD 16-02054, and agrees with Defendants' assessment that Plaintiff failed to mention anything about his First Amendment and RLUIPA claims against the specific Defendants named in the amended complaint. *See* Spaich Decl. ¶¶ 6-28, Exs. A-W. Specifically, nowhere in either of two aforementioned relevant appeals (CHCF 13-00097 and RJD 16-02054) does the Director's level reviewer handle Plaintiff's First Amendment and RLUIPA claims against Defendants. *See* Spaich Decl. ¶¶ 6-8, Exs. A-C. A grievant must utilize all steps of the grievance process made available by the prison so that it can reach the merits of the complaint. *Woodford*, 548 U.S. at 90. Here, the record shows that Plaintiff failed to exhaust his administrative remedies as to his First Amendment and RLUIPA claims against Defendants. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (no exhaustion where grievance complaining of upper bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk but officials disregarded that order). Furthermore, the regulations specifically require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3). Because Plaintiff did not name Defendants or describe their involvement when he filed either CHCF 13-00097 or RJD 16-02054, he failed to satisfy these requirements with respect to his First Amendment and RLUIPA claims against Defendants in this action.

In sum, Defendants met their initial burden as the moving party by setting forth evidence to demonstrate Plaintiff's non-exhaustion, specifically by conducting a search of the CDCR's records and finding no grievances submitted to the Director's level by Plaintiff concerning his First Amendment and RLUIPA claims. *See Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). Defendants, relying on declarations of OOA Acting Chief Spaich, argue that none of the appeals Plaintiff submitted at the third level of review (during the relevant time frame) include his

14

1 First Amendment and RLUIPA claims against Defendants. *See* Spaich Decl. ¶¶ 6-8. Lastly, the two appeals relating to the denial of a Kosher Religious Diet—CHCF 13-00097 and RJD 16-02054—did not mention Defendants or describe their involvement, and thus Plaintiff failed to meet the exhaustion requirement to name "all staff member(s) involved" and "describe their involvement in the issue." *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3). Under *Albino*, Defendants have therefore proven that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *See Paramo*, 775 F.3d at 1191.

Upon the burden shifting to Plaintiff, in regards to his First Amendment and RLUIPA claims, the Court finds that Plaintiff has not presented any evidence disputing Defendants' evidentiary assertions that he failed to exhaust his claims. Plaintiff has failed to show that "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id.* As mentioned above, Plaintiff did not file an opposition to Defendants' motion, and this he has failed to put forth proof of exhaustion. Thus, Plaintiff has failed to bring forth evidence to defeat Defendants' motion for summary judgment as to his First Amendment and RLUIPA claims. The Court further notes that Plaintiff did not mention anything about his efforts to exhaust in the amended complaint. *See* Dkt. 42.[3] Meanwhile, the evidence produced by the Defendants *is sufficient* to carry their ultimate

---

[3] While Plaintiff mentioned in his amended complaint that he filed one 602 appeal—log no. SVSP-15-1749, in which he complained about the Kosher Religious Diet. Dkt. 42 at 9. However, he did not allege that he exhausted the issues in his amended complaint in that appeal. *See* Dkt. 42. Instead, Plaintiff claims that by denying SVSP-15-1749, "Defendant[s] and their agent[s] have systematically deprived [him] of a reliable, one-hundred percent Orthodoxed [sic] Jewish religious diet for approximately either (8) years although [he] is entitled to such a diet while under their authority within the CDCR." *Id.* at 11. The Court notes Plaintiff did not submit proof the he filed SVSP-15-1749 in the form of an exhibit in support of his amended complaint, nor did he submit it in opposition to the motion for summary judgment (as he did not file an opposition). Even if Plaintiff had submitted proof that he filed SVSP-15-1749, such proof would be irrelevant because SVSP-15-1749 is ***not*** an appeal that relates to the issue of how Defendants' denial of that appeal violated his constitutional rights. Specifically, Plaintiff alleges that Defendants were the ones responsible for ***denying*** SVSP-15-1749, and thus their alleged unconstitutional actions were not among the issues raised in SVSP-15-1749. Therefore, Plaintiff would not have met his burden in order to defeat Defendants' motion for summary judgment because SVSP-15-1749 is irrelevant to the issue of whether he exhausted his available remedies as to his claims against Defendants in his amended complaint.

burden of proof in light of Plaintiff's verified factual allegations.

The record in this case demonstrates that Plaintiff had the opportunity and ability to properly exhaust the aforementioned retaliation claim but failed to do so. Therefore, Defendants are entitled to summary judgment under Rule 56 based on Plaintiff's failure to exhaust administrative remedies. *See Albino*, 747 F.3d at 1166. Accordingly, the Court GRANTS Defendants' motion for summary judgment as to his First Amendment and RLUIPA claims against Defendants, which are subject to dismissal without prejudice.[4] *See McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (proper course in claims dismissed due to failure to exhaust administrative remedies is dismissal without prejudice to refiling).

## III. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Defendants' motion for summary judgment is GRANTED as to all claims, and judgment will be entered in their favor. Dkt. 53. Specifically, Defendants' motion for summary judgment is GRANTED based on Plaintiff's failure to exhaust administrative remedies as to his First Amendment and RLUIPA claims against Defendants. Thus, his First Amendment and RLUIPA claims are DISMISSED without prejudice to refiling after exhausting California's prison administrative process. *See McKinney*, 311 F.3d at 1200-01.

2. Defendants' Motion for Judgment on the Pleadings is DENIED as moot. Dkt. 53.

3. The Clerk shall close the file and terminate as moot any remaining pending motions.

4. This Order terminates Docket No. 53.

IT IS SO ORDERED.

Dated: March 9, 2020

YVONNE GONZALEZ ROGERS
United States District Judge

---

[4] The Court's decision to grant Defendants' motion for summary judgment as to the First Amendment and RLUIPA claims against Defendants based on Plaintiff's failure to exhaust administrative remedies obviates the need to consider any of their alternative arguments as to these claims.

16